JOHN HOLT RICHARDSON ET AL.

*vs.*

AUGUST MALTHAN.

*Sales in equity: perfecting title.   Parties: purchaser who has assigned, not necessary.*

It is not necessary for a purchaser at public sale to be made a party to a suit to correct title, if said purchaser has assigned his interest.                                                p. 547

*Decided January 15th, 1919.*

Appeal from the Superior Court of Baltimore City. (HEUISLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*John Holt Richardson* (with whom was *George Washington Williams* on the brief), for the appellants.

*Julius H. Wyman* (with whom was *James T. O'Neill* on the brief), for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from a judgment obtained by the appellee against the appellant for $280.00, being the amount, with interest, which he paid as a deposit at a sale of real estate sold at public auction on the 6th day of June, 1916, by Messrs. Johnson, Price and Hellen, three of the appellants, who described themselves in the advertisement as "Committee." The money was paid to Mr. Richardson, the other appellant, who was the attorney representing them and still held the amounts paid him.

An agreement had been entered into on the 22nd day of October, 1914, between Eugene D. Springer and George E. Springer, trading as E. D. Springer & Company, parties of the first part, the three persons referred to above as "Committee," parties of the second part, and creditors of E. D. Springer & Company, parties of the third part. It referred to a contract by Springer & Co. to erect the Eastern Shore State Hospital, their inability to complete it, the agreement of the parties of the second part to act as trustees in completing it, in order that the balance remaining due might become available for the payment of the creditors and the subcontractors on said building, and to the fact of the assignment by Eugene D. Springer to the Committee of certain credits and property, including that involved in this controversy which the Committee sold at public auction to the appellee. Mr. O'Neill, the attorney for the appellee, testified that shortly after the sale Mr. Richardson showed him the agreement and told him that he thought that it would interfere with an absolute sale, by reason of the fact that it might be construed to be a trustee sale, and hence might be necessary to proceed in a Court of Equity, file a bond, etc., under section 238 of Article 16 of the Code. He said that he did not know whether the paper was on record, and thereupon Mr. Richardson stated in open Court that the records only showed a deed from Springer and wife to Messrs. Price, Hellen and Johnson, individually, and that the agreement was not recorded.

A number of letters were offered in evidence, including one of June 30th, 1916, from Mr. O'Neill to Mr. Richardson, copies of which were sent to the other appellants, in which he referred to the sale to his client, the payment of $250.00 by him as a deposit on the property, that his client expected them to give him a marketable title, and unless that was done he would file a petition in a Court of Equity to compel the specific performance of the contract. On August 3rd, 1916, he again wrote Mr. Richardson asking him to let him know what action he would take and said his client "stands ready to pay cash for the property at any time you are prepared to deliver us marketable title." He said that on the next day Mr. Richardson told him, "We don't believe we can give you a good title," etc. Again on September 15, 1916, he wrote to Mr. Richardson that he had ascertained that nothing had been done in connection with the sale of the property and "Without any prejudice to the right of my client, I am writing to say that unless I hear from you on or before Tuesday next, I am going to take the matter up with the Court." On the next day Mr. Richardson replied: "Answering your favor of September 15th would say that a bill was filed to sell the Springer property nearly a month ago, and as soon as a decree is passed the property will be sold." On September 18th Mr. O'Neill again wrote to Mr. Richardson, and sent a copy to each of the other three appellants, in which he referred to the purchase and the deposit by his client and his readiness to carry out his part of the contract, and then made formal demand upon Mr. Richardson, as their attorney, and upon each of his three clients, that they carry out their part of the contract and give a merchantable title to his client— stating that otherwise he was instructed to enter a suit against the three constituting the Committee for breach of the contract.

Later on negotiations were begun for a transfer of the property by the Committee to George E. Springer, a son of the original owner, and on November 10th, 1916, an agreement was entered into between the plaintiff (appellee) and

said Springer, which recited that some question had arisen as to the authority of the Committee to sell without an order of Court, that Springer was desirous of obtaining the rights and interests of the appellee, as well as the Committee, "for the purpose of transferring a good and merchantable title to the said porperty to a corporation to be organized for the purpose of erecting upon the said property a garage." Springer agreed to save harmless the appellee from any loss of the $250 paid as a forfeit at the auction sale and to pay him in full satisfaction for his interests $500 within sixty days from the date of the agreement, together with counsel fees incurred by the appellee in the transaction, not to exceed the sum of $50.00—the $500 to be paid in full in cash within the time mentioned, otherwise the agreement was to be void. The appellee agreed to transfer to Springer, or his assigns, all his right, title and interest in the property. A note for the $500 was given when the agreement was made, and the appellee demanded payment of that, but it was never paid. Captain Gill represented Springer, and Mr. O'Neill testified that he found out through him that the transaction between Springer and Malthan was off because Springer could not get a permit to build a garage. The matter dragged along until July 3, 1917, when Mr. O'Neill wrote to the Committee and Mr. Richardson, demanding the $250 and stating that unless it was returned by July 6th he would enter suit against them. On July 5th the latter replied that they were ready to transfer the property to the appellee at any time on his paying the balance of the purchase money.

George E. Springer testified that he had negotiations through Mr. Richardson and that he was to take care of appellee's interests and was to pay the $250 to the appellee, which was to be credited to their account on the purchase price of the property. It appears from Mr. Richardson's testimony that he obtained a decree for the sale of the property in March, 1917, and the next day a sale was reported to the Smallwood Garage Company, which had been organized by

18        VOL. 133

Mr. Springer to take the property over. Richardson testified that he filed a bill to perfect the title in July, 1916, at the instance of Mr. O'Neill and it was originally intended that the sale was to be reported to the appellee, but as he had assigned his rights to Springer, who represented the Smallwood Garage Company, it was made to that company; that the $250 was to be applied to the purchase price and the balance was to be paid by the Smallwood Garage Company and the appellee was to get his profits out of the deal he made with Springer; that the Garage Company did not pay the balance of the purchase money and before the letters of July 3rd and 5th, 1917, the Court had ordered a re-sale of the property at the risk of that company; that he did not hear a word of complaint from September, 1916, until July 3rd, 1917; that he did not make the appellee a party to the proceeding because he did not think it necessary, and he was proceeding according to Mr. O'Neill's idea, that it was necessary to make the Springers parties; that they consented to a decree for the sale, which was passed in March, 1917.

The plaintiff did not offer any prayers, but the defendants offered five, all of which were rejected, and the Court instructed the jury orally. To the rejection of the prayers and to giving the oral instruction the defendants excepted.

In the view we take of the case it is not necessary to determine whether section 238 of Article 16 of the Code made it necessary for the Committee to file a bond before making the sale, and then report it to a Court of Equity. The evidence is that the proceedings to correct any error which may have been made by not complying with that section was with the full concurrence of Mr. O'Neill, who was acting for the purchaser, even if it be conceded that Mr. Richardson was in error when he testified that it was done *at the instance* of Mr. O'Neill. At the most, it was an error which could easily have been corrected, especially if we are right in our understanding that the agreement was signed by all of the creditors of Springer & Company as well as by them. The record does not set it out in full but states: "Which agree-

ment was signed and sealed by all of the parties in interest,"
and while the deed to Messrs. Hellen, Price and Johnson is
not in the record it is stated that it was made to them *individ-
ually* and the agreement was not recorded with it.

The proceedings to perfect the title were instituted in July,
1916—the month following the sale. The fact that Mr. Mal-
than was not made a party to them can not be of importance,
for if his attorney thought that was necessary it could readily
have been done, and the Court would doubtless have made
him a party, if he had so requested. Those proceedings are
not in the record, and hence we do not know just what they
contain, but we can see no reason why it was necessary to
make him a party, in order to perfect the title. The Spring-
ers were made parties, and we assume that the Committee,
or trustees, if they were so named, gave the bond, the absence
of which seems to be one ground of objection to the sale to the
appellee. It would have been a very simple matter to have
corrected what was supposed to have affected the title. A
bill stating the facts in reference to the sale, the grounds of
objection made to it, and asking the Court to take jurisdic-
tion and fix the penalty of the bond, then reporting the sale
and asking the Court to confirm it would as far as we can
see from the record have been all that was necessary—after
making the Springers parties and giving them an opportunity
to answer. An order *nisi* could have been published, and
the whole proceeding completed within a few months. There
was unnecessary delay but the record does not show that the
appellants were responsible for all of it. The agreement
made by the appellee with George E. Springer was dated
November 10th, 1916, and the amount to be paid to the appel-
lee for his interest was payable within sixty days from that
date. His attorney was trying to induce Springer to pay that
throughout the month of January, 1917, as shown by his let-
ters. The uncontradicted evidence of Mr. Richardson shows
that through Captain Gill, the attorney for the Smallwood
Garage Company, Springer and wife consented to a decree in
March, 1917, and the sale to that company was reported the

next day. There is nothing in the record to show that the sale to the Smallwood Garage Company was subject to the condition that it could obtain a permit to erect the garage. The agreement of November 10th, 1916, does recite that Springer was desirous of obtaining title to the property for a corporation to be organized for the purpose of erecting a garage upon it, but that is a very different thing from making an agreement to purchase subject to that condition. The appellants were not parties to that written agreement, although they claim they did agree to what we have stated above as to the application of the $250. It is true that Mr. O'Neill testified that he, Captain Gill and Mr. Springer had agreed that the matter was called off, but that could not affect the Committee, without their consent.

The oral instruction of the Court was erroneous in several respects. The statement that "Mr. Malthan was entitled to be made a party to the suit referred to unless he waived his rights as a party in interest. If parties are omitted from legal proceedings of which they should be made parties they can not be held bound by the results flowing from a suit of that sort" was calculated to mislead the jury and prejudice the defendants. We have stated above what the plaintiff could have done. Then the statement that "You can not hold Mr. Malthan to the sale if the parties who conducted the sale arbitrarily left Mr. Malthan out of the transaction and sold the property to another without his consent, and the probative value of the testimony that you have heard is entirely within your discretion" was to say the least very injurious one. It is too indefinite as to what was meant by "arbitrarily left Mr. Malthan out of the transaction," etc. From what we have said above, it will be seen that we do not think it was necessary to make him a party. But the statement that "A man can not keep $250.00 belonging to a purchaser who has deposited that sum of money on the theory that he should be furnished a marketable title to the property, when such title has not been furnished," while correct as a general principle, if the purchaser has done nothing to prevent the title being

given, was clearly error under the circumstances of this case. If it was agreed, as the appellants' evidence tends to show, that the Smallwood Garage Company could purchase the property, and that the $250 could be applied to the purchase money, it was not a correct statement of the law applicable to the facts. The appellee claims that he only agreed to assign his interest to Springer and argues that he did not actually assign it. The written agreement does say, "agrees to transfer," etc., but the evidence is that Springer gave Malthan his note for $500 for his interest, and the evidence of Captain Gill, which was admitted without objection is that "August Malthan, the plaintiff in this case, in consideration of the sum of five hundred dollars assigned all his right, title and interest to the contract sued on in this case to the Smallwood Garage Company," that the title was acceptable to him and the sale was reported to his client; "that the two hundred and fifty dollars paid on account by Mr. August Malthan was to be applied toward the purchase price of the property." If that be correct, the appellants were not required to return the $250, and the appellee would have to look to Springer for it. If there is a re-sale and the property brings sufficient to pay the appellants the balance due and the costs, and there is something left over, it should be applied as far as necessary to the payment of the $250. There was, therefore, reversible error in the oral instruction of the Court.

The defendants' first prayer was properly rejected, as we do not understand the plaintiff's evidence to be wholly in accord with the defendants' in reference to the $250. If it be admitted that it was agreed that the $250 be credited to the purchase money due by the garage company, that prayer could properly be granted. The second was properly rejected. The defendants could not have conveyed the property to the plaintiff after they had sold it to another, and whether they in terms refused to convey the property or not, the prayer could not have been properly granted. The third did not sufficiently cover the facts, and the fourth was also properly rejected for the same reason as given above for the rejection of

the second prayer. The principle announced in the fifth is a correct one under some circumstances, but it is not applicable to this case.

We will reverse the judgment, but will remand the case because we do not understand the evidence on the part of the plaintiff to be that the agreement with the appellants was that the $250 was to be applied to the purchase money to be paid by the garage company. The record is not altogether satisfactory as to that. If such was the case then clearly the plaintiff is not entitled to recover, but if that was merely an agreement between the plaintiff and Springer, to which the defendants were in nowise a party, that would not necessarily interfere with his right to the money. When the appellants sold the property to the garage company they could not convey it to the plaintiff, but if the plaintiff for purposes of his own, either to make the $500 or for other reasons, agreed with the appellants that the $250 should be applied to the purchase money to be paid by the garage company, then he can not recover in this action.

*Judgment reversed and new trial awarded, the appellee to pay the costs.*